**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LARRY BERNHARD,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No.:  5:08-CV-4335** |
| **v.** | : | |
| | : | **THE HONORABLE** |
| | : | **GENE E.K. PRATTER** |
| | : | |
| **BROWN & BROWN OF LEHIGH** | : | |
| **VALLEY, INC.,** | : | |
| **RICHARD KNUDSON** | : | |
| **and KELLY HOFFMAN** | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.    **Plaintiff's Summary Counter-Statement of The Facts**

Contrary to Defendants' assertions, the true and correct facts of record in this matter are exhaustively stated in Plaintiff's Reply to Defendants' Motion. Plaintiff's Answer refers to deposition testimony and attaches documents which establish the following:

Plaintiff was a loyal, long time employee of Defendants having worked for them and/or their predecessor companies for almost 14 years, when he was stricken with cancer of the neck and head. He was fired during his treatment for cancer. Defendant Brown & Brown is a national company, with thousands of employees, which is listed on the New York Stock Exchange.

Plaintiff's diagnosis came in February of 2006. The cancer had spread to the lymph nodes and therefore required aggressive and difficult treatment including

1

daily radiation. Plaintiff was terminated by Defendants as a result of ADA and FMLA-covered leave taken to treat his cancer.

There is no issue that the Defendants were subject to the ADA and its reasonable accommodations provisions. This has been admitted.

There is no issue of "disability" under the ADA. This has been admitted by Defendants.

There is no issue of "notice" of the disability under the ADA. This has been admitted by the Defendants.

There is no issue that Plaintiff requested additional leave as an accommodation to treat his cancer by radiation. This has been admitted by Defendants.

Therefore, the only issue in this case is: Did Defendants engage in the interactive process, in good faith, to determine if reasonable accommodation existed.

Plaintiff  was essentially, a salesperson or "Producer" among Defendants' approximately 90 employee, Lehigh Valley workplace. At least 16 other employees of the Lehigh Valley offices were "producers" or sales-persons. The job was primarily an office job. Plaintiff had never been disciplined for work performance or absenteeism and in 2004 had received a Personal Lines Manager of the Year award from Defendants' President.

Plaintiff's diagnosis, in February of 2006, occurred after he discovered a lump on the side of this throat. After evaluation at Fox Chase Cancer Center, he underwent surgery and was prescribed an aggressive treatment of radiation, since the cancer had metastasized to the lymph nodes.

On May 1, 2006, Plaintiff requested leave for scheduled surgery on his neck. He advised Defendants, Knudson and Hoffman that he would return by May 22, 2006. In fact, he returned earlier, beginning part-time work on May 15, 2006 and resuming full-time duties on June 1, 2006. Unfortunately, due to follow-up biopsies and test results, Plaintiff's doctor at Fox Chase Cancer Center prescribed a further course of daily radiation therapy. As a result of complications from the radiation, Plaintiff's doctors prescribed further leave until the first week of January, 2007. This requested additional leave was less than three more months unpaid leave at the end of the three month leave separately protected by the FMLA. There was nothing indefinite about Plaintiff's leave requests: He took two weeks leave for surgery and returned as soon as possible. There was no other surgery in the horizon – only radiation treatments. These were ended on a specific date3, as Defendants were advised. Due to radiation complications, his healing period was extended once by his doctors. There was no more treatment or radiation on the horizon and if Defendants had even pretended to honor the interactive process, Dr. Risch would have told them that Plaintiff's irradiated tissue would have "cooled down" within the three month additional leave period, based on a reasonable degree of medical certainty.

Plaintiff and his doctors repeatedly advised Defendants that Plaintiff would return to work in the first week of January, 2007. This was done by doctor's certification in August and October of 2006; verbally by Plaintiff in September and October of 2006; and by e-mail from Plaintiff on October 12, 2006.

The Plaintiff and his doctor specifically identify the first week of January 2007 as his return to work date. Plaintiff stated at his deposition that he definitively told Knudson that he was returning in January 2007. This alone creates an issue of credibility and precludes summary judgment on this issue. Defendants try to create an "indefiniteness" issue here by asserting that in one part of his e-mail of October 12, 2006, Plaintiff says "at least" three more months (while just below this statement, he states clearly that he will return on January 2007 <u>twice</u>). Defendants make the same argument regarding Plaintiff's doctor's certification of October 4, 2006, which states clearly "3 months" to return to work and states in another part an "anticipated" January 2, 2007 return to work date. This is equivalent to the employee calling all requests for medical leave involving life-threatening diseases "indefinite" because an employee and/or his doctors say <u>e.g.</u> "god willing" or "with luck" etc... when they identify a return to work date during treatment.

It is clear that Plaintiff provided a return to work date of early January 2007 – <u>and, in fact, he was indeed cleared to work on said date ultimately (and would have returned to the Defendants' worksite on said date had they not fired him)</u>.If confused, no one from Defendants' bothered to call Plaintiff or his doctors for clarification. No documents exist on the alleged "confusion". Defendants had at all times existing medical authorizations (due to FMLA leave) to independently contact Plaintiff's doctors and ask questions. Not one call. Not one document. Not one letter. Not one shred of testimony evidencing confusion, at the time. Even the termination letter to Plaintiff does not say that he was terminated for seeking "indefinite leave" (or, for that matter, due to undue burden and substantial disruption to operations).

However, Defendants cannot avail themselves of the arguments of "indefiniteness" or lack of "qualification" or that there were "unduly burdensome" accommodation requests by Plaintiff. This is because Defendants, <u>who have no ADA employee or handbook  policy whatsoever</u>, never even tried to engage in the ADA-required "interactive process". Specifically, the ADA requires the employer, at the request stage, to conduct a case-by-case (employer-specific; operations; etc... specific; tasks specific; resources specific etc...) analysis to determine essential job functions/qualification and/or whether the requested accommodation is unduly burdensome in the context of Plaintiff's duties and the employers' resources and needs.

It is not just a question of accommodation costing some money or inconvenience to employers. All accommodation costs money and inconvenience. A ramp for a wheelchair costs money and inconvenience. No documents exist or have been produced by Defendants documenting or relating to undue burden or substantial disruption to operations. Defendants never tried to engage in the interactive process; the less than three months additional leave was not burdensome (since Plaintiff was primarily a sales person; Defendants had at least 16 other sales people in the Bethlehem office; Plaintiff could do some work on his computer at home during his leave), Indeed, Defendant Knudson told Plaintiff, in their October 20, 2006 telephone call, he did not even know why he had to fire Plaintiff (let alone having analyzed and formulated reasons why the request for Plaintiff's accommodation was "burdensome" due to substantial and fundamental description of business operations based on the multi-factor analysis.

In fact, what actually happened in this case becomes manifest once the record is reviewed. Defendant Brown and Brown, under the lead of Hoffman advising Knudson, (who, as President, was and is completely clueless on the ADA rights of his employees) "checked off" in their HR "analysis" that Plaintiff had exceeded his FMLA leave and could therefore be terminated without concern. They never considered Plaintiff's ADA rights and the fact that the ADA provides for consideration of leave accommodation in excess of the FMLA's guaranteed three months. This is understandable because Defendants have absolutely no ADA employee or handbook policy whatsoever and, in fact, were in negligent or reckless disregard of the rights of ADA disabled individuals in their workplace.

The fact is that this case includes doing exactly what employers are not allowed to do: Be completely ignorant of the ADA; have no ADA employee or handbook policy or compliance procedures; have no manager training or understanding of the ASA; completely fail to engage in the interactive process – and then, one year later, after termination, sit back and come up with reasons why Plaintiff's required accommodation was "unduly burdensome". This is not what the ADA requires. If the interactive process is done post-termination, then it is not done when a disability stricken person needs it most: When they are trying to balance critical medical treatment with earning a wage for their families. In this sense, interactive process delayed really is ADA rights denied.

II.   **Standard of Review**

Summary Judgment under Federal Rule of Civil Procedure 56 must be considered by review of the record "taken as a whole." <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).   In order to obtain summary judgment, the moving party must, on the basis of pleadings, depositions, answers to interrogatories, and admissions on file, demonstrate an absence of issues of material fact in dispute. Fed. R.C.P. 56(c).   Once the moving party has satisfied this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. <u>Celotex Corp. v. Catrett</u> 477 U.S. 317 (1986), <u>supra</u>. Furthermore, the nonmoving party is required to identify specifically the evidence upon which a verdict in its favor may be based. <u>Childers v. Joseph</u>, 842 F.2d 689 (3d Cir.1987). Moreover, where the nonmoving party bears the burden of proof on an issue, it must identify evidence which suffices to establish every element essential to the claim. <u>Celotex</u>, <u>supra.</u>

How and if weight is to be afforded competing evidence has been most fully developed under Federal Rule of Civil Procedure 50.   The standard for summary judgment under Rule 56 is identical to that required in a motion for judgment as a matter of law under Rule 50.   See <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133 (2000); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250—251 (1986)("since the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, the inquiry under each is the same"); <u>See also</u> <u>Celotex</u>, 477 U.S. at 323. Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary

basis for a reasonable jury to find for that party on that issue." Fed. Rule Civ. Proc. 50(a); See also Weisgram v. Marley Co., 528 U.S. 440 (2000).

Significantly, review should be limited to evidence favorable to the nonmovant. Wilkerson v. McCarthy, 336 U.S. 53 (1949). See 9 A C. Wright & A. Miller, *Federal Practice and Procedure* §2529, pp. 297—301 (2d ed. 1995) (hereinafter "Wright & Miller"). In Wilkerson, the Court stated that "in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of "the nonmoving party". 336 U.S., at 57. In doing so, however, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Lytle v. Household Mfg., Inc., 494 U.S. 545, 554—555 (1990); Liberty Lobby, Inc., supra, at 254; Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, n. 6 (1962); Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir.1993); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1077 (3d Cir.1992). Knudson, Hoffman and Lear are not disinterested witnesses, and therefore, their self-serving testimony, when faced with conflicting evidence and testimony, should be disregarded. See Abramson v. William Patterson College 260 F.3d, 265, 283 (3[d] Cir 2001); Int'l Shortstop, Inc. v. Rally's Inc. 939 F.2d 1257 (5th Cir 1991); Bodenheimer v. PPG Industries 5 F.3d 955 (5th Cir 1993). See also Burrows v. Township of Logan, Lexis 71495 (W.D. Pa., 2008).

As set forth below, there are factual disputes as to material issues in this case, including whether Defendants ever engaged in the "interactive process"; and whether (on a case-by-case, contextual analysis) the leave requested was unduly

burdensome <u>vis-a-vis</u> Defendants' particular business operations. If anything, Summary Judgment on a number of issues related to liability should be granted to the Plaintiff – since it is clear, from the record established in Plaintiff's Reply to Defendants' Motion, that Defendants did not consider the ADA in the least and did not apply the interactive process.

### III.   **Argument**

Incredibly, Defendants begin their argument on the ADA by saying that they have proof on the record that Plaintiff cannot establish a <u>prima facie</u> case! Defendants' assertion either reveals a gross misunderstanding of the law or evidences a deliberate attempt to mislead the Court.

While the latter is not likely to happen, Defendants' misstatement of the law must be viewed in light of their completely meritless Motion and in light of the fact that Defendants have been previously sanctioned by the Court. An ADA accommodation case is not one for cavalier generalizations and statements. "Plaintiffs have not met their <u>prima facie</u> case!?" Okay, Plaintiff's <u>prima facie</u> case is:

    a)  Disabled under the ADA;

    b)  Qualified with or without reasonable accommodations; and

    c)  Terminated because of a disability.

<u>Shannon v. City of Philadelphia</u>, Lexis 18084, (E.D. Pa. 1999). Therefore, the record shows <u>without question</u> the Plaintiff was disabled; that he gave notice of said disability; that he requested accommodation; and was refused and terminated. The only issue is "qualified <u>with</u> or without reasonable accommodation". It is the

employers' burden to prove that Plaintiff's requested accommodations would have been unduly burdensome and therefore unreasonable. 42 U.S.C. § 12112 (b) (5). In Armstrong v. Burdette, 438 F.3d 240 (3rd Cir. 2006), the Court stated:

> Following our decision in **Taylor**, the Superior Court held that Tynan had the burden only to "make clear that . . . assistance . . . for . . . her disability" was desired. Id. at 657. Once the request is made, "it is the employer who must make the reasonable effort to determine the appropriate accommodation." Id. (citing Taylor, 184 F.3d at 311). "By failing to initiate the interactive process, and forcing Tynan to return without any accommodation" once she made her handicap known and announced her desire for assistance, her employer improperly "forced the termination."
>
> In light of these instructions, there is a substantial likelihood that the jury incorrectly thought Armstrong had the burden of identifying and requesting from the Hospital a specific reasonable accommodation when, in fact, he only had to show he requested an accommodation in order to satisfy the second prong of his failure to accommodate claim. As Armstrong's failure to accommodate claim was denied because he was erroneously forced to demonstrate an element that he did not need to prove, we must reverse and remand unless this error was harmless. In other words, the Defendants could still prevail if we conclude that Armstrong could not establish either the third or fourth elements of his case -- his employer did not make a good faith effort to assist, or he could have been reasonably accommodated.

The Court should examine carefully the reckless and/or intentionally misleading "argument" by Defendants that "Plaintiff was not qualified because he could not return to work at the end of his FMLA leave" (i.e.: Plaintiff requested additional leave) because it is such a misstatement of the law that it borders on being unethical.

A.  **Plaintiff has set forth a violation of the ADA and the PHRA**

In this case, Defendants do not even come close to satisfying the standard for summary judgment under Rule 56 and, in their Motion, have selectively ignored various provisions of the ADA and PHRA[1].

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of that individual's disability and additionally requires employers to provide requested accommodation according to its provisions. See 42 U.S.C. § 12112(a); McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369, 371 (6th Cir. 1997). An individual is considered "disabled" under the ADA if he:

> (A)[has] a physical or mental impairment that substantially limits one or more of [his or her] major life activities . . . ;
>
> (B) [has] a record of such impairment; or
>
> (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2). Defendants concede that Plaintiff is "disabled". Defendants, additionally, concede that they were aware of Plaintiff's disability. They admit Plaintiff's request for leave accommodation. Therefore, Defendants' argument can only be based on an assertion that there is no material dispute on the issues of "qualification" and/or "reasonableness" of the request for accommodation "due to

---

[1] **The ADA and PHRA are read in pari materia.  Weston v. Pennsylvania, 251 F.3d 420 (3rd Cir. 2001); Wein v. Sun Company, 936 F.Supp. 282 (E.D. Pa. 1996).**

undue burden". Somewhere in the analysis of these two issues, the ADA requires application of the "interactive process".

To recover under the ADA, a disabled individual must also be a "qualified individual with a disability," which the ADA defines as:

> **[A]n individual with a disability who, <u>with or without</u> <u>reasonable accommodation</u>, can perform the essential functions of the employment position that such individual holds or desires . . . .**

42 U.S.C. § 12111(8) (emphasis added).

Defendants cannot base a "defense" on the question of whether Plaintiff was a "qualified" person with a disability standing alone. Defendants cannot logically and properly assert such a defense.  Other than his need for leave, there is not even the slightest hint that Plaintiff was not "qualified" for his sales job. As seen below, the only issue on which the Defendants can arguably base their Rule 56 Motion is whether the requested leave accommodation was "unreasonable". The reason why Defendants' "qualification" argument is nonsensical is because a "qualified" disabled employee is defined in the ADA as an individual "who, <u>with or without reasonable accommodation</u>, can perform the essential functions of the employment position that such individual holds . . .." 42 U.S.C. § 12111(8) (<u>emphasis added</u>). In <u>Quick v. Albert Einstein</u>, Lexis 78335 (E.D. Pa. 2007), the Court observed:

> **Defendants alternatively argue that plaintiff cannot establish a prima facie case even if she is "disabled" because she presents no evidence that she is a "qualified individual" under the ADA. The ADA defines "qualified individual" as an individual "who, with or without reasonable accommodation, can perform the essential functions  [*44] of the employment position that such individual holds or desires." <u>42 U.S.C. § 12111(8)</u>. The EEOC guidelines creates a two-part test for making this determination: (1) a court must determine whether the individual satisfies the requisite skill, experience, education**

and other job-related requirements of the employment position that such individual holds or desires; and (2) a court must determine whether the individual, with or without reasonable accommodation, can perform the essential functions of the position held or sought. 29 C.F.R. app. § 1630.2(m), cited in Deane v. Pocono Med. Ctr., 142 F.3d 138, 145 (3d Cir. 1998).

6.      According to the EEOC guidelines:

(1) The term reasonable accommodation means:
(i) Modifications or adjustments to a job application process that enable a qualified applicant                 with                 a disability to be considered for the position such qualified applicant desires; or
(ii) Modifications or adjustments to the work environment, or to the manner or circumstances             under        which        the position held or desired is customarily performed, that enable a qualified        individual with a disability to perform the essential functions of that position; or
(iii) Modifications or adjustments that enable a covered entity's employee with a disability        to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly        situated employees without disabilities.
(2) Reasonable accommodation may include but is not limited to:
(i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
(ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position;        acquisition        or modifications of equipment or devices; appropriate adjustments or modifications of   examinations,    training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.
(3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. 29 C.F.R. § 1630.2 (o).

Defendants' argument on this issue is so erroneous that Plaintiff will not begin his response by citing the relevant case law. Rather, Plaintiff will first point out the fundamental flaw in Defendants' "qualification" argument - analogous to "putting the cart in front of the horse". Defendants argue that they should get summary judgment since, even if cancer is considered a disability (which

Defendants concede) to meet the second prong of the test, a plaintiff must be physically capable of performing the functions of his job at all times. Plaintiff, Defendants argue, was not "qualified" since, at the time he requested additional leave (i.e.: the end of his FMLA leave), he was totally disabled and certified by his physician as unable to perform any of the functions of his job.

As above stated, the ADA states that a "qualified" individual is also one who can perform the essential functions of his employment with accommodation. See 42 U.S.C. § 12111 (8). It makes no sense to say that Plaintiff was not qualified because he was not able to perform essential job functions during his leave – when the leave was the very accommodation sought by Plaintiff! Defendants can certainly argue that Plaintiff's request for leave, or alleged "indefinite" leave, was "unreasonable" – but they cannot frame their argument as one of Plaintiff lacking "qualification". Plaintiff has adequately shown that he could have performed the duties of his job with reasonable accommodation, consisting of less than three months more leave to treat and alleviate his condition (cancer) and the severe side effects of his intensive radiation treatments.

Accordingly, Defendants' attempts to argue "lack of qualification" in the absence of engaging in the interactive process to determine reasonable accommodation to Plaintiff, must fail. Indeed, whether Plaintiff is "qualified" must be considered in the light of extending to Plaintiff reasonable accommodation. Stated otherwise, in order for Plaintiff not to be "qualified" due to his need for the three months additional leave, the Defendants would have to show that not taking such leave was an essential job function a of salesperson – because it created a

14

substantial and fundamental disruption and was therefore unduly burdensome.

However, <u>even if</u> Defendants had properly formulated a "qualification" argument, they still do not come close to establishing any right to summary judgment on this issue. In <u>School Board of Nassau County v. Arline</u> 480 U.S. 273 (1987), the Supreme Court recognized that a fact-specific "individualized inquiry" is required in determining whether a disabled individual is "qualified" for a particular job. Stressing the ADA's purpose, the Supreme Court noted: "Such an inquiry is essential if § 504 is to achieve its goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear…" <u>See also</u> <u>Holiday v. City of Chattanooga</u> 206 F.3d 637 (6th Cir. 2000); <u>EEOC v. Prevo's Family Market, Inc.</u> 135 F.3d 1089 (6th Cir 1998) (need for individualized, case-by-case analysis of the employee's disability and specific essential job functions). "Both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith… It logically follows, therefore, that the party who fails to communicate or engage in a dialogue with the other party is not acting in good faith". <u>Mengine v. Runyon</u>, 114 F.3d 415 (3rd Cir. 1997); <u>Taylor v. Phoenixville</u>, 185 F.3d 296 (3rd Cir. 1999) ("It may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.")

In <u>Shapiro v. Township of Lakewood</u>, 292 F.3d 356 (3rd Cir. 2002), the Court noted that the 3rd Circuit has "endorsed" the concept of the interactive process and noted:

> **The ADA itself does not refer to the "interactive process." The ADA provision upon which Shapiro's claim is based requires**

an employer to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless[the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" 42 U.S.C. § 12112(b)(5)(A). A regulation issued pursuant to the ADA, however, states that, "to determine the appropriate reasonable accommodation it may be necessary for [the employer] to initiate an informal, interactive process with [the employee] in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

In Mengine, we endorsed the concept of the "interactive process" and explained:
When the interactive process works well, it furthers the purposes of the Rehabilitation Act and the ADA.
. . .
We observed that an employer that fails to engage in the "interactive process" runs a substantial risk: "if an employer fails to engage in the interactive process, it may not discover a way in which the employee's disability could have been reasonably accommodated, thereby risking violation of the Rehabilitation Act." Id. at 420-21; see also Deane v. Pocono Medical Center, 142 F.3d 138, 149 (3d Cir. 1998) (en banc).

See also Hohider v. UPS, 574 F.3d 163 (3rd Cir. 2009) (employer is required to engage in a good faith interactive process; and must make a good faith effort to assist the employee in seeking accommodation). "An employer who fails to engage in the interactive process runs a serious risk that it will erroneously overlook an opportunity to accommodate a statutorily disabled employee, and thereby violate the ADA". Deane v. Pocono Med., 142 F.3d 138 (3rd Cir. 1998). (Hohider, supra also discusses the illegality of "100% healed" before return to work policies, if the employer applies such a policy without the interactive process and "individualized assessment".)

Since, at a minimum, specific factual disputes exist, Defendants' Rule 56 Motion based on lack of "qualification" must fail. Secondly, as set forth below, since

Defendants never engaged in the ADA's interactive process, they are not in a position to argue that Plaintiff was not "qualified", nor can they prove "undue burden" at this juncture. In <u>Tish v. McGee</u>, Lexis 87010 (W.D. Pa., 2008), the Court noted:

> Once Magee was aware of Tish's disability and consequent need for a reasonable accommodation, the burden was on Magee to request additional information for the purpose of determining whether Tish's disability could have been reasonably accommodated. *Armstrong v. Burdette Tomlin Memorial Hospital,* 438 F.3d 240, 246-248 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has acknowledged that employers are usually in a better position than a disabled employee to determine whether the employee's disability can be accommodated. In *Taylor v. Phoenixville School District,* 184 F.3d 296 (3d Cir. 1999), the Court of Appeals explained:
> <u>The interactive process would have little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome. That's not what the proactive process intended</u>: it does not help avoid litigation by bringing parties to a negotiated settlement, and it unfairly exploits the employee's comparative lack of information about what accommodations the employer might allow. In addition, in some cases courts may be better positioned to judge whether the employer met with the employee in good faith than to judge how burdensome a particular accommodation really is.
> *Taylor,* 184 F.3d at 315-316 (footnote omitted). Delserone's affidavit does not entitle Magee to summary judgment, since the onus was not on Tish to discover a particular accommodation for her alleged disability.

(<u>emphasis added</u>).

As set forth above, Defendants' "qualification" argument misses the point – since Defendants do not analyze whether Plaintiff is "qualified" in light of his request for accommodation. (In other words, their argument must be: "even if we had granted his requested reasonable accommodation, he still was somehow not qualified".) Therefore, Defendants are left with only one argument: That <u>Plaintiff's request for accommodation in the form of more leave should be deemed</u>

<u>"unreasonably burdensome"</u> by the Court in a Rule 56 Motion. In other words, the Court should now engage in the "interactive process" and determine as a matter of law that accommodation to Plaintiff of less than three more months leave would have been unreasonable as substantially disruptive of Defendants' business!

The above argument flies completely in the face of established ADA law and interpretive cases and regulations. The <u>EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA</u> was obviously never read or considered by Defendants. This is attached as Exhibit "A" hereto and provides, in pertinent part:

> **<u>Enforcement Guidance</u>:**
> **<u>Reasonable Accommodation and Undue Hardship Under the</u>**
> **<u>Americans with Disabilities Act</u>**
> **INTRODUCTION**
> **This Enforcement Guidance clarifies the rights and responsibilities of employers and individuals with disabilities regarding reasonable accommodation and undue hardship. Title I of the ADA requires an employer to provide reasonable accommodation to qualified individuals with disabilities who are employees or applicants for employment, except when such accommodation would cause an undue hardship. This Guidance sets forth an employer's legal obligations regarding reasonable accommodation; however, employers may provide more than the law requires**
> · · ·
>
> **The duty to provide reasonable accommodation is a fundamental statutory requirement because of the nature of the discrimination faced by the individuals with disabilities.**
>
> · · ·
>
> **<u>Undue Hardship</u>**
> **The only statutory limitation on an employer's obligation to provide" reasonable accommodation" is that no such change or modification is required if it would cause "undue hardship" to the employer. "Undue hardship" means significant difficulty or expense and focuses on the resources and circumstances of the particular employer in relationship to the cost or difficulty of providing a specific accommodation. Undue hardship refers not only to financial difficulty, but to reasonable accommodations that are unduly extensive, substantial, or disruptive, or those that would fundamentally alter the nature**

18

or operation of the business. An employer must assess on a case-by-case basis whether a particular reasonable accommodation would cause undue hardship.

. . .

**TYPES OF REASONABLE ACCOMMODATIONS RELATED TO JOB PERFORMAN**

. . .

**Leave**

Permitting the use of accrued paid leave, or unpaid leave, is a form of reasonable accommodation when necessitated by an employee's disability.

. . .

An employee with a disability may need leave for a number of reasons related to the disability, including, but not limited to:

- o obtaining medical treatment (e.g., surgery, psychotherapy, substance abuse treatment, or dialysis); rehabilitation services; or physical or occupational therapy;

- o recuperating from an illness or an episodic manifestation of the disability;

17.   May an employer apply a "no-fault" leave policy, under which employees are   automatically terminated after they have been on leave for a certain period of time, to an employee with a disability who needs leave beyond the set period?
No. If an employee with a disability needs additional unpaid leave as a reasonable accommodation, the employer must modify its "no-fault" leave policy to provide the employee with the additional leave, unless it can show that: (1) there is another effective accommodation that would enable the person to perform the essential functions of his/her position, or (2) granting additional leave would cause an undue hardship. Modifying workplace policies, including leave policies, is a form of reasonable accommodation.

18.   Does an employer have to hold open an employee's job as a reasonable            accommodation?
Yes. An employee with a disability who is granted leave as a reasonable accommodation is entitled to return to his/her same position unless the employer demonstrates that holding open the position would impose an undue hardship.

. . .

19.    **Can an employer penalize an employee for work missed during leave taken as a reasonable accommodation?**
**No. To do so would be retaliation for the employee's use of a reasonable accommodation to which s/he is entitled under the law. Moreover, such punishment would make the leave an ineffective accommodation, thus making an employer liable for failing to provide a reasonable accommodation.**
Example A: **A salesperson took five months of leave as a reasonable accommodation. The company compares the sales records of all salespeople over a one-year period, and any employee whose sales fall more than 25% below the median sales performance of all employees is automatically terminated. The employer terminates the salesperson because she had fallen below the required performance standard. The company did not consider that the reason for her lower sales performance was her five-month leave of absence; nor did it assess her productivity during the period she did work (i.e., prorate her productivity).**
**Penalizing the salesperson in this manner constitutes retaliation and a denial of reasonable accommodation.**
Example B: **Company X is having a reduction-in-force. The company decides that any employee who has missed more than four weeks in the past year will be terminated. An employee took five weeks of leave for treatment of his disability. The company cannot count those five weeks in determining whether to terminate this employee**

. . .

21.    **How should an employer handle leave for an employee covered by both the ADA and the Family and Medical Leave Act (FMLA)?**
**An employer should determine an employee's rights under each statute separately, and then consider whether the two statutes overlap regarding the appropriate actions to take.**

In order to determine whether a requested accommodation is reasonable and/or unduly burdensome, an employer is required to engage in the "interactive process" under the ADA. The record (as exhaustively cited to and analyzed in Plaintiff's Reply to Defendants' Motion), shows that at no time did Defendants engage in the interactive process. No documents or concrete proof or analysis exists

on the record to show that the interactive process was applied and that the "undue burden" factors test was considered.

Essentially, the Defendants' conduct and arguments in this case breakdown to two inexcusable legal errors for a sophisticated employer:

1. The belief by Knudson, Burger/Hoffman and Lear, that they could terminate an employee just because they came to the end of their FMLA leave – without even considering the ADA; and

2. The continuing argument and inexplicable misapprehension by Defendants and their counsel that "leave" cannot be a reasonable accommodation under the ADA. So, they argue, since Plaintiff could not return to work at the end of his FMLA leave → he was not "qualified" – end of inquiry! No need to respond to his request for reasonable accommodation in the form of extension of leave or to engage in the interactive process! The fact that "qualified" is defined to be considered <u>with</u> "reasonable accommodation"? Forget it – we'll just ignore that!

In addition to reasonable leave as an accommodation, it is well established that the interactive process must include a consideration of reassignment or partial reassignment and/or potential restructuring to any available job or function that the Plaintiff can perform. <u>See</u> <u>Gile v. United Airlines, Inc.</u>, 95 F.3d 492, 496 (7th Cir. 1996) (rejecting the defendant's argument that the "ADA does not obligate an employer to reassign an employee to a different type of position where the employee . . . can no longer perform the essential functions of the job she currently

holds"). Due to their failure to engage in the interactive process, the Defendants also failed to consider what Plaintiff could have done from home; who could cover portions of his duties; whether there were other jobs or duties the Plaintiff could have been re-assigned to in order to prevent the loss of a valuable worker who had the misfortune of becoming ill. Defendants' own admissions on the record leave no doubt that Plaintiff sought leave of absence as an accommodation. Once a disabled employee has requested accommodation, the employer must make "reasonable effort to determine the appropriate accommodation… through a flexible, interactive process that involves both the employer and the employee." 29 C.F.R. Pt. 1630. The employer must make a "good faith effort" to assist the employee in seeking and determining reasonable accommodations. Taylor v. Phoenixville Sch. Dist. 185 F.3d 296 (3d Cir. 1999) (an employee need not use any particular words or phrases in requesting reasonable accommodation).

In Taylor, it was stated:

> **An employee's request for reasonable accommodation requires a great deal of communication between the employee and employer. Both parties bear responsibility for determining what accommodation is necessary. Neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.**

184 F.3d at 312.

The process of determining accommodation under the interactive process is a "joint undertaking". Vendetta v. Bell Atlantic Lexis 14014 (E.D. Pa. 1999); See also

Tish v. Magee-Women's Hospital Lexis 87010 (W.D. Pa. 2008), cited above, and worth repeating:

> ...The interactive process would have little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome....

Defendants' argument misses the point when they simply allege that Plaintiff could not attend work and therefore is not "qualified". Where leave from work is the requested accommodation, whether attendance is defined by the employer as an essential job function is not the relevant inquiry. Shannon v. City of Philadelphia. LEXIS 18089 (E.D. Pa. 1999). Whether employer testifies generally that salesmen were expected to sell as much as possible – is also not the issue. In this case, in fact, nowhere does any Defendant document, fact or piece of evidence pre-indicate that attendance (i.e.: without the incurring of any particular length of leave) was an essential job function for salesmen (about 16-18 of them selling in Bethlehem) – This is especially true when one concedes that Defendants have an open-ended personal leave policy in their Handbook. (You can add to this that Plaintiff was set up to work from home; that he had already reached more than half of his sales goal etc....) In Conneen v. MBNA Bank, 334 F.3d 318 (3rd Cir. 2003) the Court, describing the ADA analysis on "qualified" stated:

> In order to establish that a plaintiff is "qualified" under the ADA, the employee must show that he/she "satisfies the requisite skill, experience, education and other job-related requirements of the [**18] employment position that such individual holds or desires." Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3rd Cir. 2001). If the plaintiff is able to make that showing, he/she must then establish that "with or without reasonable accommodation, [he/she] can perform the essential functions of the position held or sought." Id. MBNA  does not contest that Conneen possesses the requisite

"skill, experience, education," her job requires or that she has the ability to satisfactorily perform her duties. Rather, as noted above, MBNA  insists that reporting for work is an essential component of Conneen's job, and her inability to do that on a consistent basis renders her unqualified for the managerial position she claims she is entitled to. However, we disagree with that position and conclude that the district court erred in accepting it.

"Essential functions" must be "fundamental" to one's job and not simply "marginal." *Skerski*, 257 F.3d at 279 (quoting 29 C.F.R. § 1630.2(n)(1)). The inquiry into whether a job requirement is essential to one's job "is a factual determination that must be made on a case by case basis [based [**19] upon] *all* relevant evidence." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3rd Cir. 1998) (*en banc*)) (quoting 29 C.F.R. pt. 1630, app. § 1630.2(n)). Relevant evidence may include, but is certainly not limited to, " 'the employer's judgment as to which functions are essential' and 'written job descriptions prepared before advertising or interviewing applicants for the job.' " *Id.* However, the employee's actual experience is also relevant to the inquiry. *Skerski*, 257 F.3d at 281.

In this case, there are no such "written job descriptions" or "policies" nor is it fundamental to Mr. Bernhard's salesman job not to take less than three months leave to heal from cancer when: There were 16-18 other salespeople; he could work from home; there was no job description or other employer policy that prohibited such leave; there was, in fact, was an employer policy that could approve such leave for personal reasons; Bernhard had already reached over 50% of his sales goal; Bernhard was experienced and second most senior employee who could have caught up in sales etc.... Indeed, the only thing the Defendants Bethlehem "Profit Center" could claim is less sales (for a brief period only!) while Bernhard was out. However, economic considerations alone do not create "undue hardship" or "fundamental" job function. If "its gonna cost us money" was all it took, there would be no ADA accommodations.

The ADA is clear that "a reasonable accommodation can include additional unpaid leave for necessary medical treatment" 29 C.F.R. Pt. 1630.2. <u>See also</u> EEOC <u>Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA</u>, October 17, 2002, Attached hereto as Exhibit "A". <u>See also</u> <u>Cehrs v. Northwest Ohio Alzheimer's</u>, 155 F.3d 775 (6th Cir. 1998); <u>Schmidt v. Safeway Inc.</u>, 864 F.Supp.991 (Nor. 1994); <u>Corbett v. National Products</u>, Lexis 3949 (E.D. Pa. 1995) (ADA accommodation includes additional unpaid leave for treatment). Whether to grant additional leave, beyond FMLA, must be subjected to the ADA interactive process and reasonable accommodation analysis.  Therefore, <u>even</u> if Defendants had any policy (identifying certain limitations on leave for salespersons such as Plaintiff as "essential job functions"), Defendants would still have to determine (using the interactive process) whether granting additional leave would be unduly burdensome. In this case, Defendants do not have any such policy. Moreover, granting such additional leave here would not have been unduly burdensome to Defendants (<u>see</u> Plaintiff's Affidavit attached to the Reply Motion). In this case, there is no question that, <u>at a minimum</u>, genuine issues of material fact exist as to whether Defendants made any reasonable effort to determine any reasonable accommodation for Plaintiff. <u>See</u> <u>Vennelly v. Pennsylvania Turnpike Commission</u> 208 F. Supp. 2d 504 (E.D. Pa. 2002).

Numerous courts have stated that leave of absence for necessary medical treatment is a reasonable accommodation under the ADA. <u>Shannon</u> supra; <u>Basith v. Cook County</u> 241 f.3d. 919 (7th Cir. 2001); <u>Criado v. IBM Corp.</u>, 145 F. 3d. 437 (1st Cir.

1998); <u>Nones v. Walmart</u> 164 f.3d. 1243 (9th Cir. 1999); <u>Corbett v. National Products</u>

<u>Co.</u>, Lexis 3944 (E.D. Pa. 1995). In <u>Corbett</u> the Court noted:

> **A non-exhaustive list of reasonable accommodations is provided in the statute.** *See* **42 U.S.C. § 12111(9); 29 C.F.R. Pt. 1630, App. Although a leave of absence is not listed in the statute, guidelines to the ADA state that "other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment." 29 C.F.R. Pt. 1630, App. "[A] leave of absence to obtain medical treatment is a reasonable accommodation [under the ADA] if it is likely that, following treatment, plaintiff would have been able to safely perform his duties."** *Schmidt v. Safeway Inc.,* **864 F. Supp. 991, 996-97 (D. Or. 1994).**

As to Defendants' argument and cited cases, that Plaintiff's request for leave accommodation was open ended, this is clearly a false factual statement. First of all, no talismanic words are required in asking for accommodation. The employee need not even mention the ADA or even the word "accommodation". <u>Corbett v. National Products</u>, Lexis 3949 (E.D. Pa. 1995) Secondly, Plaintiff's request was not for "indefinite" leave just because parts of the numerous communications providing a specific return date also included phrases such as "hopefully" etc... - these are analogous to a cancer-stricken patient saying "god-willing I will return on that date". Such common phraseology, when used by seriously ill employees, is not to be used by employers to evade their responsibilities under the ADA. Plaintiff was not a futile case, deluding himself of recovery.

Moreover, Defendants' "questions", if any, related to the "definitiveness" of the leave request, would have been answered had they engaged in the interactive process. Indeed, Plaintiff was able to return to work when he said he would be, but Defendants fired him without waiting to find out.

As above stated, Plaintiff's request for leave was not indefinite. However, for the sake of argument, Defendants improperly argue that open ended or indefinite leave is never a reasonable accommodation, citing <u>Conoshenti v. PSEG</u>, 364 F.3d 135, 151 (3rd Cir. 2004).  However, <u>Conoshenti</u> says no such thing. The sum and substance of the holdings of the cases cited by Defendants is that a Plaintiff is required to prove (at trial or after discovery) that he would have been able to return to work in a reasonable time.  Because Defendants failed to engage in any interactive process, as required under the ADA, (<u>see</u> <u>Taylor v. Phoenixville School District</u>, <u>supra</u>), they deprived themselves of the opportunity to be clear on the answer to this question – if, in fact, they were ever truly unclear on the January 2007 return date. This was not a case where Plaintiff's cause was futile and really, he was dreaming of recovery which would never happen. (See Plaintiff's expert reports attached to the Reply to the Motion). The Defendants should have understood (and asked if they didn't) that the course of radiation had ended and because of the buildup of radiation on the tissue, it took (within a reasonable degree of medical certainty) three more months for the tissues to return to normal.

In the final analysis, the issues raised by Defendants, unsupported as they are in the facts and the law under the ADA, are not amenable to disposition by summary judgment.  Defendants' Motion must be denied.

B.      **Plaintiff has asserted a violation of the FMLA**

Under § 2615 of the FMLA, 29 U.S.C. § 2615(a)(2), it is a prohibited act to take an adverse employment action because one takes FMLA protected leave. The

Plaintiff's ultimate burden of proof at trial requires that he establish that (1) he is protected under the Act, (2) he suffered an adverse employment action, and (3) a causal connection exists between the adverse action and plaintiff's exercise of his FMLA rights. Peter v. Lincoln Tech. Inst., 2002 U.S. Dist. LEXIS 17345 (E.D.Pa. 2002) (Van Antwerpen, J.), citing Baltuskonis v. US Airways, Inc., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999).

Defendants argue that Plaintiff has not set forth any material facts in dispute relating to a violation of the FMLA.

However, Plaintiff has produced facts which support an FMLA retaliation claim. It is not disputed that Defendant Brown & Brown of Lehigh Valley, Inc. was a covered employer under the FMLA. [An employer is covered if it has more than fifty employees in a seventy-five mile radius. 29 U.S.C. § 2611(4)]. Moreover, it was disputed that Plaintiff was employed by Defendant for more than one year. [A person is eligible for FMLA leave after one year of employment.  29 U.S.C. § 2611(2)]. Furthermore, Defendants concede that Plaintiff suffered a serious medical condition under the FMLA, in conceding that is cancer qualified as a "disability" under the ADA.

It is clear also that Plaintiff was terminated shortly (less than two weeks) subsequent to FMLA qualified medical leave.  As stated on the record, reviewed in Plaintiff's Answer to Defendants' Motion, Defendants took into account and/or considered Plaintiff's FMLA leave in terminating him.

Plaintiff's FMLA retaliation claim is properly brought pursuant to § 2614. Upon return from FMLA leave, an employee must be restored to his or her original

job, or to an equivalent job with equivalent pay, benefits, and other employment terms and conditions. 29 U.S.C. § 2614 (a)(1). In addition, an employee's use of FMLA leave cannot result in the loss of any employment benefit that the employee earned or was entitled to before using FMLA leave. 29 U.S.C. § 2614 (a)(2). In this case, the record shows that Defendants took Plaintiff's FMLA leave into account in determining if they would terminate him or not. (See Plaintiff's Reply to Defendants' Motion.)

As to the harassment of Plaintiff by Brown & Brown, post-termination, Plaintiff has shown that this constituted FMLA retaliation. Defendants lied to the Unemployment Compensation office by alleging that Plaintiff had "quit" his job. Defendants knew, when they did this, they had terminated Plaintiff during a time that he had cancer and that he would have no income or health benefits. They then tried to lie to prevent him from getting unemployment. Then, once he got a job, they tried to get him fired from that job by calling and harassing his employer! They did this by trying to utilize a contract they knew they could not enforce; and without any facts to support a violation. (Indeed, the Court will note that if Defendants truly believed that Plaintiff violated his employment contract, they would have filed a counterclaim - they haven't.) This is factual evidence contrary to the proffered non-retaliatory reason of Defendants (i.e.: genuine concern over solicitation of their customers). To the contrary, this post-termination hostile action, coupled with the temporal proximity of the termination subsequent to Plaintiff's approved FMLA leave, raises an issue as to whether the Defendants' actions were motivated by retaliatory animus.

Clearly, the Complaint sets forth a claim for FMLA retaliation pursuant to 29 U.S.C. § 2614, since it asserts that Plaintiff was terminated incident to and/or following leave and was subsequently retaliated against, post-termination. Plaintiff has also set forth an "interference" claim pursuant to 29 U.S.C. § 2615 (a)(1). In the recent case of <u>Rashid v. Sovereign Bancorp</u> LEXIS 47688 (E.D. Pa. June 19, 2008), <u>citing</u> <u>Conoshenti v. Pub. Serv. Elec.</u>, 364 F.3d 135 (3d Cir. 2004), the Court stated:

> **Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.**

Plaintiff has specifically alleged such "discouragement" including through the Defendants' post-termination acts. Accordingly, Plaintiff has stated both an FMLA retaliation and an FMLA interference claim.

**C.**     <u>**Plaintiff has properly set forth a claim for aiding and abetting under the PHRA, against the individual Defendants**</u>

Section § 955 of the Pennsylvania Human Relations Act, 42 Pa.C.S.A. § 955, expressly extends the coverage of the Act beyond employers.   It defines as prohibited:

> **(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.**
>
> **(e) For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory**

> **practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.**

42 Pa.C.S.A. § 955(d)-(e).  A "person" is defined in § 954 as including:

> **One or more individuals, partnerships, associations, organizations, corporations, legal representatives, trustees in bankruptcy or receivers. It also includes, but is not limited to, any owner, lessor, assignor, builder, manager, broker, salesman, agent, employee, independent contractor, lending institution and the Commonwealth of Pennsylvania, and all political subdivisions, authorities, boards and commissions thereof.**

Defendants cite a number of cases which say, in essence, that individuals are not liable under the ADA or Title VII or the ADEA – unless they are supervisory employees "shown to have aided and abetted the employee's discriminatory actions in violation of the PHRA"! Plaintiff does not know why Defendants have cited these cases. Plaintiff has not alleged any claim against the individual Defendants based on the ADA – only the PHRA.

Secondly, for some reason, Defendants make the argument that only individuals named in the EEOC Charge can be subject to a PHRA aiding and abetting claim. The individual Defendants, Knudson and Burger/Hoffman are specifically named as aiding and abetting supervisors in the EEOC Charge.

Finally, Defendants make the somewhat bizarre argument that Knudson and Hoffman, who made the decision to terminate Plaintiff, were not "supervisors" under the PHRA because they are not specifically in Defendants' self-serving version of the direct line of authority, and/or because they now claim they had direct

subordinates etc…. This argument is unavailing. First, the PHRA nowhere requires proof that an individual defendant was a direct supervisor. Rather, it requires that he or she be a "supervisory employee." See Sheridan v. E.I. Dupont de Nemours and Co., 100 F.3d 1061 (3rd Cir. 1996); Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3rd Cir. 1996); Frye v. Robinson Alarm Co., 1998 U.S. Dist. LEXIS 1331, 1998 WL 57519, *3 (E.D. Pa. 1998); Smith v. Pathmark Stores, Inc., 1998 U.S. Dist. LEXIS 8631, 1998 WL 309916, *3 (E.D. Pa. 1998). This Court has already acknowledged that the person who notifies an employee of her termination may be liable under the PHRA. Kaniuka v. Good Shepherd Home, 2005 U.S. Dist. LEXIS 26963, *13, n.4 (E.D. Pa. 2005) citing Atkinson v. Lafayette College, 2002 U.S. Dist. LEXIS 1432, No. CIV. A. 01-CV-2141, 2002 WL 123449, at *4 (E.D. Pa. Jan. 29, 2002). Knudson and Hoffman consulted each other and jointly chose 1) not to offer any ADA rights to Plaintiff; 2) Not to engage in the interactive process with Plaintiff 3) Not to offer reasonable accommodation to Plaintiff; and 4) To terminate Plaintiff.

Between the two of them, not one bothered to check the published and public EEOC Guidelines on reasonable accommodation. It is undisputed that Knudson and Hoffman not only decided on and notified Plaintiff of his termination, but were the final authority in the decision to terminate.


**D.**     **Defendants engaged in ADA retaliation, including post-termination retaliation, against Plaintiff**

Defendants lied to the Unemployment Compensation office by saying that Plaintiff had quit his employment (see Plaintiff's Reply to Defendants' Motion). They did this to prevent Plaintiff from getting unemployment benefits.

Secondly, Defendants tried to get Plaintiff terminated from his subsequent job with Yurconic Agency and tried to interfere with this job. They did this based on a contract utterly lacking consideration that they knew, or should have known, was invalid and unenforceable; and, additionally, when they had no facts to support any misconduct by Plaintiff. (The Court will note that no such counter-claim has been filed.) Under Burlington v. White, 126 S. Ct. 2405 (2006), the Supreme Court noted that, for retaliation purposes, "adverse action" means such action as "could deter" a reasonable employee. In this case, making false statements to the Unemployment Compensation office and trying to ruin an employee's next job with falsities and threats, could reasonably deter an employee from seeking his ADA rights.

Post-termination retaliation has been held to actionable retaliation not only under Title VII but also the ADA. See Robinson v. Shell Oil Company, 136 L. Ed. 2d 808 (1997); Helfrich v. Lehigh Valley Hospital, Lexis 23708 (E.D. Pa. 2003).

**IV.        Conclusion**

In view of the foregoing, Defendants' Motion to Dismiss must be denied, as it utterly fails to carry Defendants' burden of demonstrating that there is no set of facts which would entitle Plaintiff to relief under the stated causes of action.

Respectfully Submitted,

BY: *gsk5697*
George S. Kounoupis, Esquire
Attorney I.D. No. 49798
Hahalis & Kounoupis, P.C.
20 East Broad St.
Bethlehem, PA 18018
(610) 865-2608
Attorney for Plaintiff, Larry Bernhard

## CERTIFICATE OF SERVICE

I, George S. Kounoupis, attorney for Plaintiff, hereby certify that I have filed the foregoing Brief in Opposition to Defendants' Motion for Summary Judgment electronically this day and the documents are available for viewing on-line.

Hahalis & Kounoupis, P.C.

gsk5697
George S. Kounoupis, Esquire
20 E. Broad Street
Bethlehem, PA 18018
(610) 865-2608
Attorney for Plaintiff

Date: December 2, 2009