# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY BERNHARD,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | 08-4335 |
| | : | |
| **BROWN & BROWN OF LEHIGH VALLEY, INC., et al.,** | : | |
| | : | |
| Defendants. | : | |

GENE E.K. PRATTER, District Judge                                      June 10, 2010

## MEMORANDUM

**I.    INTRODUCTION**

Larry Bernhard was diagnosed with life-threatening neck and throat cancer in February 2006. He requested and received leave from his employer, Brown & Brown of Lehigh Valley ("Brown"), to recover from surgery and undergo radiation treatments. Unable to return to full-time employment when his leave expired, he requested an additional leave of approximately three months. Brown fired Mr. Bernhard a few days after the additional three months' leave, allegedly to ensure consistency in the application of its leave policy.

Mr. Bernhard subsequently sued Brown and two Brown employees (collectively, "Brown") pursuant to the Americans with Disabilities Act, the Pennsylvania Human Relations Act, the Family and Medical Leave Act, and breach of contract. Following discovery Brown filed a Motion for Summary Judgment on Mr. Bernhard's ADA, PHRA, and FMLA claims. For the reasons discussed below, the Court will grant in part and deny in part Brown's Motion. A jury will have to decide whether Brown's stated goal of leave policy consistency conflicts with common sense.

## II. BACKGROUND[1]

Mr. Bernhard was hired by Bowers, Schumann & Welch and Robertson/Welch Insurance Services, Brown's predecessor, on or about February 23, 1999. (Deposition of Larry Bernhard at 15-16.) He was hired as a producer or salesperson, and his duties included obtaining new insurance business. (Bernhard Dep. at 25-26.) Mr. Bernhard signed an Employment Agreement with Brown, which included a commitment not to solicit any of Brown's customers for two years after leaving the company. (Def.'s Ex. C.)

On April 26, 2006, Mr. Bernhard informed his supervisor, Defendant Richard Knudson, that he was scheduled for surgery on May 1, 2006 for cancer of his neck and that he expected to be back to work by May 22, 2006. (Def.'s Ex. F., Apr. 28, 2006 email from Mr. Bernhard to Mr. Knudson.) Brown did not require Mr. Bernhard to take leave under The Family Medical Leave Act ("FMLA")[2] and continued his full salary and commissions during this period. Mr. Bernhard returned to work earlier than expected, on May 15, 2006, working sometimes from home and sometimes in the office. (Bernhard Dep. at 40.) On June 1, 2006, Mr. Bernhard returned to full time employment while he received radiation treatments. (Bernhard Dep. at 40.) Dr. Victor R. Risch administered the radiation treatments. Dr. Risch estimated that it would take five to six months from the last treatment for Mr. Bernhard to recover. (Bernhard Dep. at 41.)

After approximately two weeks of treatment, the effects of the radiation began to impact Mr. Bernhard such that he was unable to work and he needed to take FMLA leave. (Bernhard

---

[1] The factual history is undisputed unless otherwise noted. Where there is a factual dispute, as long as Mr. Bernhard has record support for his position, the facts are viewed in the light most favorable to him.

[2] FMLA requires certain employers to provide eligible employees with up to twelve weeks of leave in a twelve month period because of an employee's serious health conditions. 29 U.S.C. § 2612(a)(1)(D).

Dep. at 43-44.) On July 5, 2006, Mr. Bernhard requested FMLA leave, expecting to return to work on or about August 21, 2006. (Def.'s Ex. G, Mr. Bernhard's Application for Family or Medical Leave; Bernhard Dep. at 44-46.)

The FMLA leave commenced on July 10, 2006. (Bernhard Dep. at 42-43.) At around that time, Mr. Bernhard submitted to Brown a certification from Dr. Risch that indicated that Mr. Bernhard would be incapacitated for four to five months and unable to perform work of any kind during that time. (Def.'s Ex. H.) The certification also indicated that radiation treatment would end on August 24, 2006, with Mr. Bernhard requiring two to three months to recover afterward. (Def.'s Ex. H.)

In late September/early October 2006, Mr. Bernhard applied for long term disability. In his application, he noted that he was "unable to perform any of [his] daily duties due to radiation w/ extended recovery." (Def.'s Ex. I.) His physician's certification accompanying his application, dated October 14, 2006, stated that any restrictions on his employment activities would end by January 2, 2007, that he could return to work in "1-3 months," and that trial employment could begin in "3 months (tbd)." (Def.'s Ex. I.)

Mr. Bernhard's FMLA leave entitlement expired on October 2, 2006, but he did not return to work then. Rather, on October 12, 2006, Mr. Bernhard emailed Mr. Knudson and Susan Lear, the operations leader and an HR specialist at Brown, and informed them that because of on-going treatments, he would be "unable to return to work for at least three more months," that "[i]f all goes well, the doctor said he would clear me to return to work by the beginning of January, 2007," and that he suspected he would "be on long term disability for a minimum of three months starting October 9, 2006 to January, 2007." (Def.'s Ex. J., October 12, 2006 email from Mr. Bernhard to Ms. Lear and Mr. Knudson.) Later that month, Brown requested additional

3

information from Mr. Bernhard's physician and received a certification that Mr. Bernhard was "recovering slowly," but "likely will require an additional three months to recover." (Def.'s Ex. K.)

Brown then terminated Mr. Bernhard. Richard Knudson made the decision to terminate Mr. Bernhard after consulting with Defendant Kelly Hoffman,[3] an HR consultant at Brown, and Ms. Lear. (Deposition of Richard Knudson at 18-19.) Ms. Hoffman and Mr. Knudson discussed the need to have some degree of consistency with respect to how FMLA is applied within the office in deciding to terminate Mr. Bernhard. (Knudson Dep. at 27.)

On October 20, 2006, Mr. Knudson formally informed Mr. Bernhard that his employment would be terminated effective October 23, 2006. (Def.'s Ex. M., Oct. 20, 2006 Letter from Mr. Knudson to Mr. Bernhard.) Brown also invited Mr. Bernhard to re-apply for employment should he be released to return to work. (Def.'s Ex. M.)

As it turned out, Mr. Bernhard was able to return to work in January 2007. However, Mr. Bernhard did not re-apply to Brown for employment because he "didn't feel [he] wanted to go back to work for a company that would treat their employees in that manner." (Bernhard Dep. at 71.) Instead, he obtained employment with a different insurance agency, the Yurconic Agency.

On March 7, 2007, Brown sent Mr. Bernhard a letter alleging that Mr. Bernhard had breached his Employment Agreement by soliciting Brown customers to move their insurance coverage over to his new agency and warning Mr. Bernhard that Brown would seek legal redress if Mr. Bernhard did not stop these alleged solicitations.[4] (Def.'s Ex. R.)

---

[3] Kelly Hoffman is now known as Kelly Burger. However, in their briefs, the parties still refer to her as Kelly Hoffman and the Court will do the same.

[4] Brown has not asserted counterclaims against Mr. Bernhard in this action for allegedly violating his employment agreement.

4

Mr. Bernhard filed a Charge of Discrimination with the EEOC on or about April 16, 2007. On June 26, 2008, a Notice of Right to Sue was issued by the EEOC and Mr. Bernhard filed his Complaint on September 10, 2008 against Brown, Mr. Knudson, and Ms. Hoffman. On November 13, 2008, Brown filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. The Court denied Brown's Motion by Order dated February 3, 2009, as premature because no discovery had been conducted and numerous disputes of fact existed regarding Bernhard's termination. Brown filed this Motion for Summary Judgment on November 19, 2009, and the Court held oral argument on the motion on February 19, 2010.

### III. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.

5

After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing, that is, the non-moving party. Anderson, 477 U.S. at 255.

IV.  **DISCUSSION**

  A.  **ADA and PHRA Discrimination Claims**

To establish discrimination under the ADA, Mr. Bernhard must demonstrate that (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).[5] A plaintiff can establish discrimination under the ADA when the employer does not make reasonable accommodations to the known physical or mental limitations of the employee unless the accommodations would impose an undue hardship on the operation of the business of the employer. Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004).

---

[5] Since the PHRA is interpreted "in accord with its federal counterparts," the legal analysis of Mr. Bernhard's ADA claims applies with equal force to his PHRA claims. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted).

Once an employee has requested an accommodation, the employer has a duty to engage in an "interactive process" aimed at designing a reasonable accommodation for the employee's disability, if possible. See 29 C.F.R. Pt. § 1630, App. § 1630.9 at 359. "The goal of the interactive process is to help identify the precise limitations of the employee's disability and the potential options that could reasonably accommodate those limitations." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Both parties bear responsibility in this process. Taylor, 184 F.3d at 312.

An employee can demonstrate that an employer breached its duty to provide a reasonable accommodation because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Williams, 380 F.3d at 772 (internal citation and quotations omitted).

A leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. See Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned . . . that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future."); Shannon v. City of Philadelphia, No. 98-5277, 1999 WL 1065210, at *6 (E.D.Pa. Nov. 23, 1999) ("Viewing the evidence in the light most favorable to [plaintiff], the court finds that a reasonable jury could conclude that [plaintiff's] request for an additional three months of unpaid leave for medical treatment was a reasonable

accommodation."). By the same token, a request for indefinite leave is not a reasonable accommodation. Peter v. Lincoln Technical Institute, Inc., 255 F. Supp. 2d 417, 437 n.7 (E.D. Pa. 2002).

Here, it is undisputed that Mr. Bernhard's cancer qualifies him as a disabled person under the ADA. Brown argues, however, that the record indicates that at the time of his termination, Mr. Bernhard was totally disabled and certified by his physician as being unable to perform any of the functions of his job. Therefore, Brown contends that at the time Mr. Bernhard requested additional leave, he was not legally qualified under the ADA to perform his job and, for that reason, cannot maintain a claim for discrimination.

Brown misreads the ADA and the applicable case law. The ADA clearly provides that a qualified individual is one who can perform the essential functions of employment "with or without" reasonable accommodation. Where, as here, an employee makes a request for an accommodation, the employer cannot merely dismiss that request out of hand as unreasonable. Indeed, that is precisely the type of employment practice the ADA seeks to avoid by requiring employees and employers to engage in the interactive process. It would be entirely against the import of the ADA if Mr. Bernhard were not considered qualified because he was not able to perform his essential job functions during his leave, as leave itself was the accommodation requested by Mr. Bernhard. See Gibson v. Lafayette Manor, Inc., No. 05-1082, 2007 WL 951473, at *7 (E.D.Pa. March 27, 2007) ("Lafayette's argument is flawed because it assumes that Gibson requested an indefinite leave of absence which it claims is unreasonable . . . The Court finds that Lafayette may have put the proverbial cart before the horse, as the evidence shows that Lafayette failed to participate in the interactive process upon learning of Gibson request for an extension of her medical leave as an accommodation."); Shannon, 1999 WL

1065210, at *5 ("For most jobs, regular attendance at work is an essential function . . . However, where a leave from work is at issue, whether attendance is an essential function of a particular job is not the relevant inquiry . . .").

Brown next argues, somewhat disingenuously, that even if Mr. Bernhard was qualified, it reasonably construed his request for leave as actually being a request for indefinite leave. Brown contends that because there was no end in sight for this leave, it was legally justified in terminating Bernhard's employment when his FMLA leave expired.[6]

Given the record evidence in this case, Brown's argument that Mr. Bernhard's request for additional leave must be construed as a request for indefinite leave as a matter of law borders on the absurd. Mr. Bernhard testified at his deposition that he told Mr. Knudson and Ms. Hoffman in October 2006 that he would return to work by January 2007. (See Bernhard Dep. at 62, 64-65, 72.) The documentary evidence also indicates that Brown was informed that Mr. Bernhard was operating under the expectation that his leave would end in January 2007. On October 12, 2006, Mr. Bernhard emailed Ms. Lear informing her that he would be "unable to return to work for at least three more months," that "[i]f all goes well, the doctor said he would clear [him] to return to work by the beginning of January, 2007," and that he would "be on long term disability for a minimum of three months starting October 9, 2006 to January, 2007." (Def.'s Ex. J.) Dr. Risch's certification, dated October 14, accompanying Mr. Bernhard's application for long term

---

[6] Brown also appears to make a half-hearted argument that Mr. Bernhard's request for leave would result in an undue hardship to its business. The ADA defines an "undue hardship" as any action requiring significant difficulty or expense and enumerates numerous factors that should be considered in this analysis. 42 U.S.C. § 12111(10)(A). Whether Brown could demonstrate the requisite undue hardship also is a jury question on this record. As noted *infra*, there is evidence that other employees could have covered for Mr. Bernhard while he was out and that he could have worked from home. Further, Brown has a decidedly unimpressive record on which to base the claim that it actually conducted an undue hardship analysis.

disability stated that any restrictions on his employment activities would end by January 2, 2007, that he could return to work in "1-3 months," and that trial employment could begin in "3 months (tbd)." (Def.'s Ex. I.) Whether Mr. Bernhard's leave request was "indefinite" under these circumstances is a quintessential jury question.

Having determined that Mr. Bernhard presents sufficient evidence for a fact-finder to find that his leave request was for a not unduly long finite period of time, the Court must next consider whether Brown engaged in good faith in the interactive process.

Mr. Bernhard has considerable evidence that Brown did not engage in this process. The record is devoid of documents demonstrating that the interactive process was applied or that any of the undue hardship factors were considered.[7] In addition, Ms. Hoffman admitted to never applying the undue hardship factors and did not know if anyone else did. (Hoffman Dep. at 22.) She also admitted never having discussions with Mr. Bernhard about working from home or having other employees cover for him during his requested leave time. (Hoffman Dep. at 35.) Nor was Hoffman aware of any financial reports, documents or records regarding costs, expenses or revenues related to Brown's analysis of Mr. Bernhard requested leave (Hoffman Dep. at 37.) For his part, Mr. Knudson testified that prior to Mr. Bernhard's termination, he did not recall talking to Ms. Hoffman or Ms. Lear about the ADA, or engaging in the interactive process. (Knudson Dep. at 34-36.) And Ms. Lear testified that she did not know if leave was a reasonable accommodation under the ADA, and she indicated that she did not conduct an undue hardship analysis. (Lear Dep. at 16, 20-25, 32-34.) Thus, genuine issues of material fact exist as to whether Brown made a good-faith effort to accommodate Mr. Bernhard's leave request.

---

[7] At oral argument, counsel for Brown could not identify any evidence in the record that Brown engaged in the interactive process. (See Oral Argument Tr. at 9.)

Finally, a reasonable fact-finder could certainly find that Mr. Bernhard was qualified for a position at Brown with a reasonable accommodation of an additional three-month's leave. Mr. Bernhard was one of 16 to 19 salespeople in his department, which suggests that other employees could have covered for him while he was out. Further, he had worked from home during his FMLA leave and still had a computer set up at home for work.[8]

In sum, because Mr. Bernhard's leave request cannot on summary judgment be construed as a request for indefinite leave, and because he presents a genuine dispute as to Brown's participation in the interactive process, the Court declines to conclude that no reasonable accommodations were possible. There is a genuine issue of material fact as to whether Brown failed to accommodate Mr. Bernhard's known disability and thus violated the ADA.

### B. ADA and PHRA Retaliation Claims

To establish a claim of illegal retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Williams, 380 F.3d at 759 (3d Cir. 2004). "[T]emporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (internal citation and quotation omitted). However, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Id. at 189 n.9 (internal citation and quotation omitted).

Mr. Bernhard's request for additional leave is protected activity under the ADA. See

---

[8] Additional leave beyond that required by the FMLA may even be permitted under Brown's own Employee Handbook, though the parties dispute the meaning of the Handbook's provisions on this additional leave.

11

Williams, 380 F.3d at 759 n.2 (requesting an accommodation under the ADA is a protected employee activity as long as a plaintiff demonstrates that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested). In addition, Brown took an adverse action against Mr. Bernhard almost immediately after this request by, to wit, firing him. As to causation, this is precisely the type of case in which temporal proximity could be unusually suggestive of a retaliatory motive. Mr. Bernhard was fired a mere eight days after his request for additional leave. In addition, the record is clear that this leave request led directly to Mr. Knudson's discussions with HR about Mr. Bernhard's employment status, which in turn, led to the ultimate decision to terminate Mr. Bernhard. Viewing these facts in the light most favorable to Mr. Bernhard, there is sufficient evidence in the record for a fact finder to infer a causal connection. Thus, Mr. Bernhard may proceed with a retaliation claim under the ADA.[9]

### C.     FMLA Retaliation[10]

To establish retaliation under the FMLA, Mr. Bernhard must show that (1) he is protected under the FMLA; (2) he suffered an adverse employment action; and (3) a causal relationship exists between the decision to terminate him and the exercise of his FMLA rights. Conoshenti, 364 F.3d at 146. As with the ADA, except in circumstances where the timing of the alleged

---

[9] The burden-shifting scheme established in McDonnell Douglas also applies to retaliation claims. Although neither party explicitly engages in a McDonnell Douglas analysis, the Court notes that Mr. Bernhard's evidence is sufficient to establish a *prima facie* case of retaliation and also to raise a genuine issue of material fact as to whether Brown's stated reasons for terminating Mr. Bernhard were a pretext for retaliation.

[10] At oral argument, counsel for Mr. Bernhard abandoned his FMLA interference claim, stating "[t]hat's a tricky one, Your Honor, and that's a tough one for us . . . . It's not an interference claim, Your Honor, it's only a retaliation, and it can't be an interference." (Oral Argument Tr. at 32, 33.) Accordingly, the Court will grant summary judgment to Brown on Mr. Bernhard's FMLA interference claim.

12

retaliatory act is "unusually suggestive," timing alone is not sufficient to demonstrate a causal link between the termination decision and an exercise of FMLA rights. Schofield v. Metropolitan Life Ins. Co., 252 Fed. Appx. 500, 504 (3d Cir. 2007).

Mr. Bernhard notes that both Mr. Knudson and Ms. Hoffman admitted to taking Mr. Bernhard's FMLA leave into account before terminating him. However, it is undisputed that when Mr. Bernhard's FMLA leave expired on October 2, 2006, he could not return to work. The FMLA does not preclude the termination of employees after the expiration of FMLA leave and, unlike the ADA, the FMLA does not require an employer to reasonably accommodate an employee's disability. Fogleman v. Greater Hazleton Health Alliance, 122 Fed. Appx. 581, 587 (3d Cir. 2004) ("The FMLA does not require that the employer provide accommodation to an employee to facilitate her return. Rather, the employee must be able to perform the essential functions of the job without accommodation."); Katekovich v. Team Rent A Car of Pittsburgh, Inc., 36 Fed. Appx. 688, 690 (3d Cir. 2002) ("An employer may not terminate an employee because he or she has taken the [FMLA] leave permitted by statute. If the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee."); Alifano v. Merck & Co., Inc., 175 F. Supp. 2d 792, 795 (E.D.Pa. 2001) ("Unlike the Americans with Disabilities Act . . . the FMLA does not require an employer to reasonably accommodate an employee's serious health condition . . .").

Although it is true that the record demonstrates that Brown considered that Mr. Bernhard's FMLA leave had expired before terminating him, that consideration alone does not support an inference of retaliation. Castellani v. Bucks County Municipality, No. 07-1189, 2008 WL 3984064, at *7 (E.D.Pa. Aug. 27, 2008) (noting that an employer's mere consideration that an employee's FMLA leave time had expired did not support the inference that the employee

13

was punished for exercising FMLA rights). Whenever an employee is terminated after the expiration of FMLA leave, it may be said that the employer has "considered" that FMLA leave time has expired. But what Mr. Bernhard must demonstrate is retaliation, and nothing in the record supports an inference that Brown held any animus toward Mr. Bernhard specifically because he availed himself of FMLA leave.[11]

Thus, Mr. Bernhard fails to present evidence of retaliation and it is undisputed that he could not return to work. Accordingly, Mr. Bernhard has failed to establish a genuine issue of material fact as to whether he was discharged in retaliation for exercising his FMLA rights. The Court will grant Brown's motion for summary judgment on Mr. Bernhard's FMLA retaliation claim.

### D. PHRA Aiding and Abetting Claims Against Defendants Knudson and Hoffman

Unlike the ADA, the PHRA provides for individual liability in cases where a person aids and abets acts of discrimination. Specifically, the PHRA makes it unlawful for "any person . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 Pa. Cons. Stat. Ann. § 955(e). The Court of Appeals for the Third Circuit has distinguished between coworkers, who cannot be held liable under section 955(e), and supervisors, who can be held liable under that section. Dici v. Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996); see also Destefano v. Henry Michell Co., No. 99-5501, 2000

---

[11] Mr. Bernhard also contends that Brown's post-termination conduct in allegedly lying to the Unemployment Compensation office about the circumstances surrounding Mr. Bernhard's termination and by contacting his new employer and trying to enforce the employment contract, coupled with the temporal proximity of the termination subsequent to the FMLA approved leave, raises an issue of material fact as to whether Brown's actions were motivated by a retaliatory animus. Again, Mr. Bernhard does not present any evidence that this post-termination conduct was punishment for taking FMLA leave.

14

WL 433993, at *2 (E.D.Pa. Apr. 13, 2000) ("Courts have distinguished between nonsupervisory and supervisory employees, and imposed liability only on the latter, on the theory that supervisory employees can share the discriminatory intent and purpose of the employer.").

Mr. Bernhard claims that he has sufficient evidence to hold both Mr. Knudson and Ms. Hoffman liable for aiding and abetting discrimination and retaliation under the PHRA.

It is undisputed that Mr. Knudson was Mr. Bernhard's direct supervisor and made the ultimate decision to terminate Mr. Bernhard. (Knudson Dep. at 18-19.) Because there is a genuine issue of material fact as to whether Brown violated the PHRA by refusing to accommodate his leave request and terminating him in response to his leave request, there is also a genuine issue of material fact as to whether Mr. Knudson aided and abetted in this alleged discrimination. Therefore, the Court will deny Brown's motion for summary judgment on the PHRA aiding and abetting claim against Mr. Knudson.

Ms. Hoffman's PHRA liability is a closer question. She was not Mr. Bernhard's direct supervisor and she did not make the decision to terminate Mr. Bernhard.[12] (Hoffman Dep. at 18, 28, 56, 97.) However, Mr. Knudson consulted with Ms. Hoffman about Mr. Bernhard's employment status and she advised him that he could terminate Mr. Bernhard because he had exceeded his FMLA leave and Brown needed to maintain consistency in its leave policy. (Bernhard Dep. at 57-58; Hoffman Dep. at 18.) Mr. Knudson heeded this advice. The record also indicates that Ms. Hoffman spoke with Mr. Bernhard about his termination and was closely

---

[12] Brown argues that Mr. Bernhard's claim against Mr. Knudson and Ms. Hoffman for aiding and abetting PHRA violations also fails because Mr. Bernhard failed to name any individual as a respondent in his EEOC charge, a deficiency that is fatal to making an aiding and abetting claim. The exhibits indicate that Mr. Bernhard did, in fact, name Mr. Knudson and Ms. Hoffman in his EEOC charge. Therefore, at a minimum, there is a genuine issue of material fact regarding whether Mr. Knudson and Ms Hoffman were properly named in the EEOC charge, thereby precluding summary judgment.

involved in the termination process. (Bernhard Dep. at 62-65.) This evidence could suggest that Mr. Knudson and Ms. Hoffman acted in concert, with each sharing the alleged discriminatory intent of their employer. Viewing this evidence in the light most favorable to Mr. Bernhard, the Court holds that he has created a genuine issue of material fact, perhaps only barely, as to whether Ms. Hoffman was a supervisory employee sharing Brown's alleged discriminatory purpose. See Wien v. Sun Co., Inc., No. 95-7646, 1997 WL 772810, at *7 (E.D.Pa. Nov. 21, 1997) (holding that summary judgment should not be granted against a company's EEO officer for aiding and abetting, even if the officer was not plaintiff's direct supervisor, where the officer participated in the meetings in which it was decided to terminate plaintiff and drafted the termination letter); see also Clinkscales v. Children's Hosp. of Phila., No. 06-3919, 2007 WL 3355604, at *8 (E.D.Pa. Nov. 9, 2007) (denying motion to dismiss aiding and abetting claim against human resources officials who were alleged to have furthered a supervisor's discriminatory conduct by failing to intervene).

## V. CONCLUSION

For the foregoing reasons, Brown's Motion for Summary Judgment is denied in part and granted in part. An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE